# Exhibit B

# Email Exchange

EXHIBIT

**From:** Plummer, Clay (USANV)
**To:** Sean McClelland; Jordan Pickrom
**Subject:** RE: Steinman - Requested PSR Corrections & Objections
**Date:** Wednesday, October 14, 2026 9:27:48 AM
**Attachments:** Steinman Firearms Forensic Report.pdf

---

I received the attached report this morning. All but four of the guns test fired successfully. So, 34 were fully operational.  I don't know if this report was previously provided.

---

**From:** Sean McClelland <Sean_McClelland@fd.org>
**Sent:** Wednesday, October 14, 2026 9:22 AM
**To:** Plummer, Clay (USANV) <Clay.Plummer@usdoj.gov>; Jordan Pickrom <Jordan_Pickrom@nvp.uscourts.gov>
**Subject:** [EXTERNAL] RE: Steinman - Requested PSR Corrections & Objections

Given the government's position and decision not to proceed on Count 2, we would also object to counting the silencers as "firearms". The upshot: there should be no 2K2.1(b)(1) enhancement; the total offense level should be 17.

Best,
Sean

---

**From:** Plummer, Clay (USANV) <Clay.Plummer@usdoj.gov>
**Sent:** Tuesday, October 13, 2026 12:17 PM
**To:** Jordan Pickrom <Jordan_Pickrom@nvp.uscourts.gov>; Sean McClelland <Sean_McClelland@fd.org>
**Subject:** RE: Steinman - Requested PSR Corrections & Objections

If you google "DoJ new policy on silencers" you will see a bunch of news articles on it. This link below is just one.

https://www.google.com/goto?url=CAESogEB6zswFcS-qsdJBqbj-2VOnbtZyIm6ZiWRVY7-OR46CD_u50GWyb4v2PpwThTlqD2_xcyakemSG9y1mvbuj1vNPKyglgIl7JZ2UhQ6VPN7dZfBdp_Lncc0UrLYvzhin-NpnM0DBGIXwkkc1UWQ1tgZtGm4o48cdeDS8m09AIuiVyAbxZrm-njyo0qxHGh2cDVx--5tRjVnZHsJryCFhaiAteQ

---

**From:** Jordan Pickrom <Jordan_Pickrom@nvp.uscourts.gov>
**Sent:** Tuesday, October 13, 2026 12:09 PM
**To:** Plummer, Clay (USANV) <Clay.Plummer@usdoj.gov>; Sean McClelland - FDO <Sean_McClelland@fd.org>
**Subject:** [EXTERNAL] RE: Steinman - Requested PSR Corrections & Objections

Hi Clay,

I'll double check; however, I don't believe the calculation will change. Out of curiosity, what is the new policy?

---

**From:** Plummer, Clay (USANV) <Clay.Plummer@usdoj.gov>
**Sent:** Tuesday, October 13, 2026 11:35 AM
**To:** Sean McClelland - FDO <Sean_McClelland@fd.org>; Jordan Pickrom <Jordan_Pickrom@nvp.uscourts.gov>
**Subject:** RE: Steinman - Requested PSR Corrections & Objections

**CAUTION - EXTERNAL:**

Here are a couple of photos I'll be introducing at sentencing (still putting them all together). There are also text messages where he is selling guns, not gun parts. I plan to call the trooper and an ATF agent at sentencing.

Jordan, would the guideline calculations change if count two was not there? Based on a new policy, I'm going to ask the court not to consider it for sentencing.

Clay

---

**From:** Sean McClelland <Sean_McClelland@fd.org>
**Sent:** Tuesday, October 13, 2026 11:09 AM
**To:** Jordan Pickrom <jordan_pickrom@nvp.uscourts.gov>
**Cc:** Plummer, Clay (USANV) <Clay.Plummer@usdoj.gov>
**Subject:** [EXTERNAL] Steinman - Requested PSR Corrections & Objections

Hi Jordan,

Thank you for your work on Mr. Steinman's report. The following are our requested factual corrections to the draft PSR:

- Cover page, Draft Para. 102, and Sentencing Recommendation (p. 26) – At the change of plea, the Court placed on the record that the maximum on Count 1 is 10 years given the charging document invoking that statute. That is correctly noted at Draft PSR p. 1 n.1, but does not appear again at Para. 102 or in the recommendation table.
    - Proposed revision: List the Count 1 maximum as 10 years, consistent with ECF No. 91. Alternatively, carry footnote 1 into Para. 102 and the Recommendation table so the Court sees the discrepancy where it reads the maximum.

- [redacted]
  - [redacted]
- [redacted]
  - [redacted]
- Draft Para. 13 – We object to the description that officers recovered 38 “firearms” rather than (non-countable) firearm parts.
  - The 38-firearm count has no itemized basis in the record.
    - The count traces to the arresting trooper’s probable-cause declaration. That declaration reports “38 firearms without serial numbers” in the same sentence as “manufacturing equipment and tools,” and “several firearms components, accessories, and suppressors.” USAO 000587. It does not list the items. And it does not say how the trooper decided which items were firearms and which were components.
    - To the defense’s knowledge, the only ATF technical examination in discovery covers the six suppressors and no other items. USAO 000612–20. From our review, discovery contains no ATF examination, function test, classification, or photograph of any of the items Para. 13 lists (if I am missing something, naturally please let me know).
      - (The defense also has no idea whether the items alleged in Para. 13 were even maintained. If they were not, relying on them would also violate due process because the defense cannot test them. *See, e.g.*, *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977–82 (9th Cir. 2015); *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994) (evidence-destruction principles “also apply to sentencing proceedings”).)
    - What’s more, the government never charged these items either—further confirming that these items were not, in fact, firearms, but

instead mere firearm parts.

- Proposed revision (new language in bold): "In total, troopers **claimed that 38 items were** firearms without serial numbers. **That count comes from the arresting trooper's field identification; ATF did not examine or classify those items. The arresting trooper also did not explain how the trooper decided which items were allegedly firearms and which were firearms parts or components. Mr. Steinman has not been charged with possessing any of these items as "firearms.""**

- [redacted]
  - [redacted]
- [redacted]
  - [redacted]
- [redacted]

[redacted]

  - [redacted]
    - [redacted]
    - [redacted]
    - [redacted]

- [redacted]
  - [redacted]
  - [redacted]
    - [redacted] [redacted] [redacted]
  - [redacted]
  - [redacted]

- [redacted]
  - [redacted]
    - [redacted] [redacted]

        - [redacted]
- [redacted]
    - [redacted]
- [redacted]
    - [redacted]
- [redacted]
    - [redacted]
    - [redacted]
    - [redacted]
        - [redacted]
        - [redacted]

The following are our guidelines objections:

Draft Para. 24 – The defense objects to the six-level enhancement under USSG § 2K2.1(b)(1)(C) because the count of 38 firearms—rather than (non-countable) firearms parts—is not proven.

- Only a "firearm" as defined in 18 U.S.C. § 921(a)(3) counts. USSG § 2K2.1, comment. n.1 (2021). And the government bears the burden of proving facts that support an upward adjustment. *See United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir. 1990).
- The record does not carry that burden.
    - The only source for the count of 38 "firearms"—rather than parts thereof—is a trooper's identification. To the defense's knowledge, no one has tested or classified these items—indeed, the government did not even charge them as firearms (or otherwise). See the correction to Para. 13 above.
- And there is reason to doubt that the alleged "firearms" met the appropriate definition—they were more likely mere firearms parts.
    - For starters, the government did not charge any of these items as "firearms" (or as anything else)—suggesting that they were not, in fact, firearms.
    - And even setting aside the government's apparent characterization, officers likewise described that Mr. Steinman's vehicle held "firearms components" and "tools used for manufacturing or assembling firearms." USAO 000587; Draft PSR Para. 12. And Mr. Steinman ran a legal firearm-parts business. See the corrections to Paras. 15 and 95.
    - Moreover, even if these items *looked* like partially-assembled firearms —they were not "firearms" as then-defined by federal law.
        - Perhaps most significantly, the offense date, August 12, 2022, came twelve days before ATF's revised definition of "frame or receiver" took effect. *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652 (Apr. 26, 2022) (effective Aug. 24, 2022).
            - That rule extended (for the first time) the definition of "firearm" to partially complete frames and receivers.
        - So an unfinished ("80%") lower recovered when Mr. Steinman was arrested was not a "firearm" and cannot count.
    - Further, as flagged above, the defense believes all these items were destroyed by government agents. So even if there were some analysis

of these items (the defense is unaware of any), using a bare written analysis for those purposes (without the defense being able to independently analyze them) would violate Mr. Steinman's due process rights. *Zaragoza-Moreira*, 780 F.3d at 977–82; *Bohl*, 25 F.3d at 910.

  - Accordingly, absent an appropriate classification of each counted item that proves whether it was a complete weapon, a frame or receiver under the definition in effect on August 12, 2022—or a part—there is insufficient evidence for the +6 enhancement.
  - Without those items, the six ATF-analyzed suppressors only count for a two-level enhancement. USSG § 2K2.1(b)(1)(A).
    - Standing alone, that correction yields a total offense level of 23 and a range of 46–57 months. Together with the Para. 25 objection below, it yields a total offense level of 19 and a range of 30–37 months.

- Draft Paras. 25 – The defense objects to the four-level enhancement under USSG § 2K2.1(b)(6)(B). The draft PSR does not establish "another felony offense," so the enhancement does not apply.
  - That is so for at least five reasons.
    - *First*, the draft PSR just generically refers to "Possession with Intent to Sell Controlled Substances" without reference to any actual statute. Draft PSR Para. 25. And it identifies no fact showing an intent to sell. Moreover, the government bears the burden of proving facts that support an upward adjustment—which it cannot do here with just a reference to some unspecified other offense. *See United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir. 1990).
    - *Second*, no factfinder has ever found, and Mr. Steinman has never admitted, an intent to sell marijuana. Indeed, the only evidence is a dismissed charge: Elko County charged possession for sale and dismissed it. Draft PSR Para. 41. The government here never charged it.
    - *Third*, there is insufficient evidence that the THC products were controlled substances at all.
      - The draft PSR reports no lab testing. The syringes only "field-tested positive for THC," and the canisters only "tested presumptively positive for THC." Draft PSR Para. 12. The draft PSR reports no test of any kind on the flower or the vape cartridges. *Id.*

    - A presumptive test shows that THC might be present, not how much. And there are plenty of ways THC might be legally present even under federal law.
        - Perhaps most obviously, hemp is cannabis, and products derived from it, with no more than 0.3 percent delta-9 THC by dry weight. Hemp has not been "marihuana" under federal law since 2018. 21 U.S.C. § 802(16)(B); 7 U.S.C. § 1639o(1).
        - And the Ninth Circuit has held that hemp-derived THC products fall within that exclusion. *AK Futures LLC v. Boyd Street Distro, LLC*, 35 F.4th 682, 691 (9th Cir. 2022).
        - Nevada has a parallel exemption. *See* Nev. Rev. Stat. 453.096.
    - Nothing in the draft PSR shows the delta-9 THC concentration of any item, which would separate a controlled substance from a lawful product.
    - The alleged weights do not fill that gap. The figures for the concentrates are gross weights that include the syringes and canisters. Draft PSR Para. 12 ("141.7 gross grams"; "1,330 gross grams").
    - Moreover, to the defense's knowledge, the alleged marijuana has not been preserved. If the items have been destroyed, relying on them would also violate due process, because the defense cannot test them. *See, e.g., Zaragoza-Moreira*, 780 F.3d at 977–82; *Bohl*, 25 F.3d at 910.
- *Fourth*, even if the products were controlled substances, there is insufficient evidence to prove intent to sell under whatever statute (again, none is identified): not least because the evidence shows Mr. Steinman was a heavy marijuana user.
    - At the time, Mr. Steinman smoked up to ten blunts a day, and he admitted being under the influence of marijuana. Draft PSR Paras. 79, 84. The draft PSR's recommendation section credits that account: "At the time of the instant offense, the defendant admittedly struggled with personal drug use." Draft PSR p. 27.
    - He had earlier held a medical marijuana card and grown marijuana legally. Draft PSR Para. 57.
    - The paraphernalia the PSR lists includes "hemp cones for

marijuana smoking." Draft PSR Para. 12.

- Agents extracted Mr. Steinman's entire phone. Draft PSR Para. 15. The PSR quotes nearly thirty of his messages. Not one concerns selling marijuana or THC. Draft PSR Paras. 15–16.
- The only mention of distribution is Mr. Kauzlarich's prediction, after the stop, that the drugs, guns, and cash would give "them enough evidence to convict you with intent to distribute." Draft PSR Para. 15 (referring to message from Aug. 12, 2022). A friend's guess about how the police might charge the case is not evidence of what Mr. Steinman intended.
- And the PSR itself ties Mr. Steinman's 2022 income to firearms, not drugs. Draft PSR Para. 95.

- *Fifth*, without a drug-trafficking offense, the proximity-to-firearms presumption falls away (even assuming the items here were actually "firearms", discussed above). The commentary presumes a connection only "in the case of a drug *trafficking* offense in which a firearm is found in close proximity to drugs." USSG § 2K2.1, comment. n.14(B) (2021) (emphasis in original). Simple possession does not trigger that same presumption. And a first-offense federal simple-possession offense is a misdemeanor, not a felony. 21 U.S.C. § 844(a). The upshot: this is not a connection-with-another-felony situation.

- Standing alone, that correction yields a total offense level of 23 and a range of 46–57 months. Together with the Para. 24 objection above, it yields a total offense level of 19 and a range of 30–37 months.

- All told (and as flagged), Mr. Steinman's total offense level should be 19 and his guideline range 30–37 months. All the factors the draft PSR identifies as downward variance factors would still apply at that range, so we are hopeful Probation will likewise maintain a downward-variance recommendation even in like of this properly calculated range.

Happy of course to discuss.

Best,

Sean A. McClelland
Assistant Federal Public Defender
District of Nevada
200 S. Virginia St., Suite 340
Reno, NV 89501

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.